# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILADELPHIA VIETNAM VETERANS MEMORIAL SOCIETY,**<br><br>　　　　Plaintiff,<br><br>**v.**<br><br>**JAMES KENNEY**, in his official capacity as Mayor of the City of Philadelphia; **TUMAR ALEXANDER**, in his official capacity as Acting Managing Director of the City of Philadelphia,<br><br>　　　　Defendants. | **Case No.:** ___2:20-cv-5418___<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

Plaintiff, Philadelphia Vietnam Veterans Memorial Society ("PVV"), by and through its attorneys, hereby files this complaint for declaratory and injunctive relief against James Kenney, in his official capacity as Mayor of the City of Philadelphia, and Tumar Alexander, in his official capacity as Acting Managing Director of the City of Philadelphia ("Defendants"). In support thereof, PVV asserts as follows:

1.　　PVV is an organization of veterans that exists to promote, honor and dignify the memory of all military veterans who served in Vietnam. Among other

1

things, PVV fulfills this mission by providing honor guards and rifle teams to attend veteran burial details and by participating in parades and other public events.  PVV's funding comes primarily from charitable donations generated through PVV's participation in public events and fundraisers.

2.      PVV brings this action to challenge a City-wide moratorium that went into effect on July 14, 2020, banning all parades and festivals through February 28, 2021.  Although the moratorium was intended to serve the legitimate public policy objective of minimizing the spread of COVID-19, the moratorium suffers from multiple constitutional infirmities.

3.      The moratorium purports to exempt "Demonstrations and First Amendment-protected activities," but singles out "Parades" as a specific example of banned activity.  Because parades constitute expressive activity protected by the First Amendment of the United States Constitution, the moratorium is a facially invalid content restriction on speech and assembly.

4.      Moreover, the moratorium is not by any stretch a reasonable time, place or manner restriction.  It extends for an eight-month period, prohibiting activities far into the future regardless of the public health imperatives that may exist at the time.  It applies to *all* City-owned property, regardless of the space available relative to the size of the gathering.  And it does not allow for any less

restrictive measures that might adequately address the public health concerns associated with COVID-19, such as social distancing and masking.

5.     The moratorium has unconstitutionally curtailed PVV's speech and assembly.  It has also chilled the speech and assembly of countless citizens throughout the City who wish to participate in parades to advance their political, cultural, and social causes, but have declined to do so because the City has told them their speech is not permitted.

6.     The City has further chilled free speech and assembly because it terminated the permitting process that typically applies to public events.  As a result, citizens are left to guess whether their expressive activity is more like a permissible "Demonstration" or an impermissible "Parade," and thus whether it will be tolerated or punished.

7.     By depriving PVV of its ability to participate in parades and hold public events, Defendants violate fundamental rights protected by the United States Constitution.  Through this action, PVV challenges the moratorium on its face and as applied to PVV.

## PARTIES

8.     PPV is a 501(c)(19) veterans' organization headquartered in Philadelphia, Pennsylvania.

9. Defendant Kenney is a party to this action in his official capacity as the Mayor of Philadelphia.

10. Defendant Tumar Alexander is a party to this action in his official capacity as the Acting Managing Director of the City of Philadelphia. As Acting Managing Director, Alexander oversees the City's Office of Special Events, which is responsible for issuing permits for special events, such as parades.

## JURISDICTION AND VENUE

11. This action arises under 42 U.S.C. § 1983 due to Defendants' deprivation of PVV's constitutional rights to freedom of speech and assembly, due process, and equal protection under the First and Fourteenth Amendments to the United States Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

12. The Eastern District of Pennsylvania is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the district in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the moratorium.

## FACTUAL ALLEGATIONS

**A.      Philadelphia Vietnam Veterans Memorial Society**

13.      PVV was founded in 1985.  Its mission is to promote, honor and dignify the memory of all military veterans who served in Vietnam.

14.      Among other activities, PVV fulfills this mission by providing honor guards and rifle teams to attend veteran burial details and by participating in parades and other public events to honor the memory and sacrifices of those who served in the United States Armed Forces.

15.      PVV fulfills its mission in a variety of other ways.  It awards scholarships and tuition aid in memory of Vietnam veterans to the children and grandchildren of veterans; it provides financial assistance to veterans and their families; it supports and promotes awareness of POW-MIA issues; it provides comfort and support for victims of Agent Orange and those suffering from post-traumatic stress disorder; it supports groups that provide counseling and job placement for veterans; and it donates and delivers food baskets to those in need during the holiday season.

16.      PVV's funding comes primarily from charitable donations generated through PVV's participation in public events and fundraisers that the organization holds throughout the year.

17.     Due to the moratorium, PVV and others throughout the City of Philadelphia are prohibited from holding or participate in many of the public events that support their mission.

**B.     The Moratorium Order**

18.     On July 14, 2020, as part of the City's efforts to combat the spread of COVID-19, Mayor Kenney announced an "Event Moratorium" and advised that the City's Office of Special Events will not "accept, review, process, or approve applications, issue permits, or enter into agreements for special events or public gatherings of 50 or more people on public property through February 28, 2021." *See* Exhibit A.

19.     The moratorium order singles out "Parades" and "Festivals" as specific examples of impermissible activity.

20.     Although the moratorium order states that it does not apply to "Demonstrations and First Amendment-protected activities," this purported exemption is inconsistent with the core policy prohibiting parades, which constitute First Amendment-protected activity.  *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 568 (1995).

21.     The moratorium order is thus facially inconsistent and invalid because it is not possible to *permit* "Demonstrations and First Amendment-protected

activities" and at the same time *prohibit* "Parades" and other peaceful assemblies and events that would typically take place during the moratorium period.

22.     At a press conference on July 14, Mayor Kenney acknowledged this inconsistency and made it clear that the City did not intend to treat all First Amendment-protected activity in an even-handed manner, advising that the City would address violations of the moratorium order on a "on a case-by-case basis."

23.     Also at the July 14 press conference, then-Managing Director of the City of Philadelphia Brian Abernathy further advised that the order would be enforced only against event organizers who follow the usual permitting process: "When we look at events, most of those are planned well in advance—months in advance—and they work with our Office of Special Events in order to do that. Those are the events that we are talking about."

24.     Based on the text of the moratorium order and the comments of public officials responsible for enforcing it, it is clear that the City will permit some expressive activity while prohibiting other expressive activity.

25.     Allowing demonstrations—irrespective of the message advanced by the demonstration—is both commendable and consistent with the commands of the First Amendment.  As the Department of Justice has recently noted, "there is no pandemic exception to the Constitution and its Bill of Rights."  United States' Statement of Interest filed in *Berean Baptist Church v. Cooper*, No. 4:20-CV-81-

D, Dkt. No. 19, at 10 (May 3, 2020); *see also In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) ("[I]ndividual rights secured by the Constitution do not disappear during a public health crisis.").

26.     However, Defendants' blanket prohibition on parades and festivals impermissibly curtails broad categories of expressive activity equally protected by the First Amendment.

27.     The moratorium order also substantially chills free speech because event organizers who seek to engage in expressive activity cannot obtain a permit for planned activities.  Instead, they are forced into the untenable position of having to decide whether to proceed without a permit and risk the possibility that the City will view their expressive activity as a violation of the order.

28.     This chilling effect was evident recently.  Each September 11, Philadelphia and other communities throughout the country commemorate the 9/11 terrorist attacks on our country, taking time to mourn the victims, honor the heroism of first responders, and remember a time when citizens stood united in support of America and against those who would do Her harm.  With each passing year, 9/11 commemorations become even more important as the memory of those terrorist attacks fades.  Yet, public 9/11 commemorations were muted in the City of Philadelphia in 2020.  While such activities are clearly protected by the First Amendment (and within the moratorium order's exemption), the City's closure of

the permitting process discourages citizens from engaging in such activity because it is unclear whether such activities constitute an illegal parade or permissible demonstration or First Amendment-protected activity.

29.     Countless other activities have or will be canceled, such as the annual Philadelphia Puerto Rican Day parade, the German-American Steuben Parade, the Polish-American Pulaski Day Parade, the Ethiopian Day Parade and Festival, OutFest, the Southwest Philadelphia Pride Day Parade, the Nicetown Give Back Festival & Parade, the Philadelphia Veterans Day Parade, the South 9th Street Italian Market Festival, the Thanksgiving Day Parade, and the New Year's Day Parade.[1] *All* of these annual events constitute First Amendment-protected activities, yet the City has banned these events entirely.  By closing the permitting process, the City has also denied event organizers the opportunity to determine in advance whether a planned activity will be deemed exempt from the order or a violation of the law.

## C.     Unequal Treatment

30.     The banned events present no greater threat to public health and safety than other demonstrations that have occurred routinely since the summer and that

---

[1]     *See also* Victor Fiorillo, *Here Are All of the Big Philadelphia Events Canceled Due to the New Coronavirus Moratorium*, PHILADELPHIA MAGAZINE (July 15, 2020), https://www.phillymag.com/news/2020/07/15/philadelphia-events-canceled-coronavirus/ (last accessed Oct. 21, 2020).

continue on a weekly basis since the moratorium order.  Indeed, while parades are

banned entirely, other demonstrations proceed with the support and commitment of

City resources.  Moreover, they are permitted to take place without any restrictions

that might advance the City's public policy objective of minimizing the spread of

COVID-19, such as social distancing and masking requirements.

31.     On June 6, 2020, for example, the City witnessed one of the largest

demonstrations in recent memory.[2]  Demonstrators began at the steps of the

Philadelphia Museum of Art and marched east on the Benjamin Franklin Parkway

to City Hall, north on Broad Street to Spring Garden, and then back to Eakins

Oval.[3]  According to updated crowd estimates, 50,000 to 60,000 participants

engaged in this protest march:



---

[2]     CBS3 Staff, *George Floyd Protest in Center City Draws Thousands as Philadelphia under Curfew for Eighth Straight Night*, 3 CBS PHILLY (June 6, 2020), https://philadelphia.cbslocal.com/2020/06/06/philadelphia-george-floyd-protests-black-lives-matter-center-city-curfew/ (last accessed Oct. 21, 2020).

[3]     Billy Penn Staff, *Huge Protest at Art Museum Brings at Least 50,000 to Philly's Largest Rally for Justice*, BILLYPENN (June 7, 2020), https://billypenn.com/2020/06/07/huge-protest-philly-50000-people-black-lives-matter/ (last accessed Oct. 21, 2020).

32.     During the July 14 press conference, Defendant Kenney confirmed that demonstrations and protest marches of this sort are exempt from the moratorium order.

33.     Similar protest marches have continued in Philadelphia since the moratorium order.  Although such marches have not involved crowds as large as the June 6 protest march, they routinely exceed the capacity limitation set forth in the moratorium order.

34.     These public demonstrations clearly constitute First Amendment-protected activity.  Therefore, they are properly exempted from the moratorium order, despite the fact that such demonstrations often involve large crowds of people traveling through City streets, the absence of social distancing, and no mask requirement (although many demonstrators do wear masks).

35.     To the extent large public gatherings present a public health risk due to COVID-19, these demonstrations are no different than traditional parades that would ordinarily require a permit.  Yet, the City has permitted the former without restriction and it has banned the latter entirely.

**D.     Legal Standards**

36.     The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or

prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble." U.S. CONST. AMEND. I.

37.     The moratorium order is an unconstitutional restriction on the rights to freedom of speech and assembly under the United States Constitution.

38.     While the government may impose reasonable restrictions on the time, place, or manner of protected speech and assembly, those restrictions must be content-neutral, narrowly tailored to serve a substantial governmental interest, and allow alternative avenues of communication and assembly.  The moratorium order fails to satisfy these requirements.

39.     The moratorium order is not content-neutral.

40.     Under the plain terms of the order, "Demonstrations" are permissible while "Parades" are not, despite the fact that they are both First Amendment-protected activities.  Moreover, Mayor Kenney himself announced at the July 14 press conference that the City will address violations "on a case-by-case basis."  In other words, the City will permit some expressive content but prohibit other expressive content.  And the moratorium order permits them to do so, depending on whether the City likens an act of marching through City streets as either a "demonstration" or a "parade."  Even worse, participants can only guess whether the City will tolerate or punish their activity.

41.     Defendants cannot pick and choose what speech is permitted in Philadelphia's streets and public spaces and at the same time meet its obligation to impose only content-neutral restrictions.

42.     Nor is the moratorium order narrowly tailored.

43.     Slowing or minimizing the spread of COVID-19 undoubtedly constitutes a substantial public interest.  But, an outright ban on all public events with 50 or more people—even with a limited exemption for certain expressive conduct—is not narrowly tailored to address this public health concern.

44.     Since the beginning of the global pandemic, public officials have sought to minimize the spread of COVID-19 with measures such as social distancing and universal masking.  A reasonable restriction may include a limitation on the size of the gathering relative to the public space available—and thus whether social distancing is feasible.  This is certainly possible, as demonstrated by the City's decision to reopen indoor dining at 50% capacity and to permit a limited number of fans to attend Philadelphia Eagles home games.  Yet the City issued a blanket ban on parades, a First Amendment-protected activity, without consideration for other reasonable measures that could adequately serve the interests of public health.

45.     Additionally, the moratorium order is not reasonable as to time, place, and manner.

46.     The COVID-19 pandemic presents a fluid and dynamic risk.  Any reasoned response must be refined based on new developments, data, and recommendations of public health officers.

47.     An eight-month blanket moratorium is unreasonable on its face.  It does not account for changes in rates of COVID-19 infection, hospitalization, or case fatalities, and it does not account for myriad therapeutic treatments and/or vaccines that may become available before the designated termination of the moratorium.  Indeed, it was these types of changing circumstances and developments that were behind the City's decision to reopen indoor dining.

48.     An eight-month moratorium forces event organizers to forego necessary planning for events that may present little risk when the activity takes place.  In other words, the order ensures that protected speech will not occur regardless of whether restrictions are even necessary to protect public health and safety when the event occurs.

49.     The moratorium applies to all City property and leaves no alternative avenue for vast swaths of expressive activity of PVV and countless other citizens in the City of Philadelphia.

50.     Additionally, the City's blanket ban is not grounded in the scientific evidence related to COVID-19.  Dr. Thomas Farley, the City's Health Commissioner, stated during a September 10, 2020 press conference that "outdoor

gatherings are less risky than indoor gatherings," and that the City has seen few, if any, reports where COVID-19 has spread outdoors. Dr. Farley has also stated repeatedly that there has been no evidence to suggest that the demonstrations that occurred since the summer resulted in any spread of the virus and that he does not "believe the protest had a big impact."

51.    Accordingly, the moratorium order is plainly unconstitutional.

**E.    PVV's Efforts to Resolve the Issue with the City**

52.    On September 15, 2020, PVV, through its counsel, wrote to Marcel Pratt, Philadelphia City Solicitor, to express its view that the July 14 moratorium order was unconstitutional and to request that the City retract the order and restore the normal permitting process within five (5) days. *See* Exhibit B.

53.    On September 18, 2020, an attorney from the City's Law Department responded on behalf of the City. *See* Exhibit C. In its response, the City fashioned an *ad hoc* exemption to its stated policy in an apparent effort to avoid a constitutional challenge: "With respect to your particular client, the bottom line is that its members can gather on public space. The City has not been forcibly dispersing any peaceful gatherings in an effort to avoid confrontation." *Id.*, at 2.

54.    While PVV appreciates the City's representation that it will decline to enforce the moratorium order, there are significant problems with this purported exemption.

55.     First, a letter is not a law.  As another district court within this Circuit recently observed, "[E]ven under their broad emergency powers, Defendants cannot govern by comment.  Rather, they are bound by the language of their orders."  *Cty. of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 5510690, at *14 (W.D. Pa. Sept. 14, 2020).  And the moratorium order is still the law in Philadelphia.

56.     Second, PVV and similarly situated organizations do not wish to flout the law by proceeding with public events in the face of clear commands from the City that such events are prohibited.  Public events and parades require significant planning and resources, such as the purchase of liability insurance or other security measures, as well as coordination with the City's Streets Department and the Philadelphia Police Department.  No responsible and law-abiding organization will hold a large public event or parade under these circumstances, regardless of the City's assertion that it will decline to enforce the moratorium order.  Responsible organizers cannot take the risk that the City might reverse course again and choose to enforce the moratorium order, or that some other citizen will seek to impose civil liability for violating the order in the event of an injury.  PVV and other similarly situated groups and individuals are thus in an untenable position, which has a substantial chilling effect on permissible speech.

57.     Third, the exemption only applies to PVV.  *See* Exhibit C, at 2 ("***With***

***respect to your particular client***, the bottom line is that its members can gather on

public space.") (emphasis added).  PVV brings this lawsuit not only to enforce its

own constitutional rights but the rights of similarly situated groups.  Thus, even

assuming that this purported exemption had the force of law and affected PVV's

as-applied challenge to the moratorium order, it does not affect PVV's facial

challenge.

**F.      The City's Supplemental Order**

58.     In that same letter, the City also advised that it was "preparing a

revised order related to outdoor gatherings that will provide additional guidance."

Exhibit C, at 1, 2.

59.     On September 21, 2020, Mayor Kenney apparently signed a

"Supplemental Order Regarding Application of the Emergency Order Allowing

Limited Reopening of Businesses, Advising Philadelphians that They Are Safer at

Home, and Establishing Safety Measures to Prevent the Spread of 2019 Novel

Corona Virus (COVID-19)."  *See* Exhibit D.

60.     The substance of the supplemental order is aimed at correcting—or at

least appearing to correct—some of the constitutional infirmities identified by

PVV.  For example, in its letter to the City, PVV identified the unreasonable length

of the moratorium order as a problem because it "does not account for changes in

infection rates, hospitalizations, case fatalities, or myriad therapeutic treatments or vaccines that may become available before February 28, 2021."  Exhibit B, at 3.  In the supplemental order, the City scaled back its eight-month ban in favor of a thirty-day ban subject to renewal based on developing scientific evidence.  *See* Exhibit D, Section 4.

61.     While the supplemental order is a step in the right direction—and a tacit admission that the moratorium order is overly broad—the supplemental order does not remedy the other constitutional infirmities of the moratorium order.

62.     First, the supplemental order does not mention the moratorium order, much less suggest revoking it.  To this day, the City's Office of Special Events website still reflects the blanket ban set forth in the July 14, 2020 moratorium order:

## The City of Philadelphia's Office of Special Events Website

### OSE UPDATES:

**FOR INFORMATION REGARDING COVID-19, please visit the Philadelphia Health Department website here:** *https://www.phila.gov/covid-19*

### POLICY UPDATE: JULY 14TH, 2020

**Event Moratorium:** Due to the ongoing public health crisis, the City's Office of Special Events will not accept, review, process, or approve applications, issue permits, or enter into agreements for special events or public gatherings of 50 or more people on public property through February 28, 2021. The City may further extend this timeline based on feedback from public health experts. Any pending applications will not be further reviewed, processed or approved.

The moratorium will apply to special events and public gatherings including, but not limited to:

- Festivals
- Parades
- Concerts
- Carnivals
- Fairs
- Flea markets

63.     In other words, the City continues to chill speech by telling those who wish to apply for a permit that they are unable to do so.

64.     Second, the supplemental order increases the capacity limitations from 50 to 150 persons, but this new limitation is still insufficient for most parades.

65.     Third, the supplemental order confirms that the City will not evaluate applications for special events or demonstrations for the duration of the order and during subsequent renewals.  Thus, the supplemental order chills free speech in the same manner as the moratorium order because event organizers cannot determine in advance whether their planned activities are permissible.

66.     Fourth, contrary to the statements in the City's response to PVV's September 15 letter, the supplemental order does not provide an unequivocal statement that the City will forbear upon enforcement of the order as to PVV or other similarly situated organizations.  To the contrary, the City states that it will enforce the supplemental order in accordance with its "de-escalation policy," taking into account whether the event is peaceful and whether the event complies with "other laws and regulations."  In other words, the supplemental order undermines the representation in the City's September 15 letter to PVV regarding enforcement.  To be clear, the supplemental order prohibits parades.  Thus, it is impossible to hold a parade without violating "other laws and regulations," such as the supplemental order.  Indeed, the supplemental order states explicitly that the failure to comply with it "shall result in orders to cease operations and the imposition of penalties, fines, license suspensions, and other remedies as provided for by law."

67.     The substance of the supplemental order contradicts the statement in the preamble that "the City welcomes all forms of First Amendment expression during these turbulent times."  Like the moratorium order, the supplemental order prohibits vast swaths of First Amendment-protected activity.

68.     Additionally, the City announced and broadly advertised the original moratorium order.  It was the lead and primary subject of Mayor Kenney's July 14

press conference and COVID-19 Update.  It was the subject of an official City

press release and numerous media articles.  It was publicized on various City

websites and social media accounts, including Mayor Kenney's own Facebook

page:



69.     The supplemental order, in contrast, did not enjoy similar publicity.  It

is not mentioned on the City's Office of Special Events website, which indicates

the opposite—*i.e.*, that the moratorium order remains in effect.  Nor does it appear

on the City's "COVID-19 guidance and updates" website.  It was not mentioned at

the Mayor's Press Conference and COVID-19 Update the day after it was enacted.

And it does not appear to have been announced on any of the City's social media

platforms.  In fact, if the City had not provided PVV's counsel with a copy of it,

PVV, like the rest of the public, would be unaware of it.

70.    Accordingly, notwithstanding the supplemental order, the moratorium

order remains in effect and continues to chill free speech.

## FIRST CLAIM FOR RELIEF

Violation of the Free Speech Clause
of the First Amendment to the United States Constitution
(42 U.S.C. § 1983)

*(against all Defendants)*

71.    PVV incorporates by reference the allegations in the preceding

paragraphs, as if fully set forth herein.

72.    The moratorium order and Defendants' enforcement thereof violate

the Free Speech Clause of the First Amendment, both facially and as applied to

PVV.

73.    Under Defendants' moratorium order, "the City's Office of Special

Events will not accept, review, process, or approve applications, issue permits, or

enter into agreements for special events or public gatherings of 50 or more people

on public property through February 28, 2021." The moratorium order specifically identifies "Parades" as an example of the type of events that are banned.

74.    Although PVV might otherwise apply for permits to hold public events consistent with its mission—or participate in an event organized by other advocacy groups not before the Court—it has been discouraged from doing so because Defendants have explicitly stated that such applications will not be accepted, reviewed, processed or approved.

75.    Defendants' imposition of the moratorium order is unreasonable and has a chilling effect on protected speech by outright banning all public gatherings of 50 or more people.

76.    The moratorium order is unconstitutionally overbroad and void as a matter of law, on its face and as applied.

77.    PVV has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the moratorium order.

78.    Pursuant to 42 U.S.C. §§ 1983 and 1988, PVV is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the moratorium order.

79.     Because it was necessary for PVV to engage the services of private counsel to vindicate their rights under the law, PVV is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

Violation of the Freedom of Assembly Clause
of the First Amendment to the United States Constitution
(42 U.S.C. § 1983)

*(against all Defendants)*

80.     PVV incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

81.     The moratorium order and Defendants' enforcement thereof violate the Assembly Clause of the First Amendment, both facially and as applied.

82.     By denying PVV the ability to conduct public events, Defendants are in violation of the Freedom of Assembly Clause.  Defendants cannot meet the no-less-restrictive-alternative test.  The Centers for Disease Control and other public health bodies have promulgated guidelines to limit the spread of COVID-19. Imposing more restrictive requirements that prohibit all public gatherings of more than 50 people is not the least restrictive means of achieving Defendants' public safety goals.

83.     Requiring PVV to refrain from public events and parades, despite the availability of substantial safeguards to satisfy the public health interests, violates PVV's constitutional right to peaceably assemble.

24

84.     PVV has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the moratorium order.

85.     Pursuant to 42 U.S.C. §§ 1983 and 1988, PVV is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the moratorium order.

86.     Because it was necessary for PVV to engage the services of private counsel to vindicate their rights under the law, PVV is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

Violation of the Due Process Clause
of the Fourteenth Amendment to the United States Constitution
(42 U.S.C. § 1983)

*(against all Defendants)*

87.     PVV incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

88.     The moratorium order and Defendants' enforcement thereof violate the Due Process Clause of the Fourteenth Amendment, both facially and as applied.

89.     A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess

at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926).

90.     The void-for-vagueness doctrine is designed to prevent arbitrary and discriminatory enforcement.  Vague regulations "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972).

91.     The moratorium order is void for vagueness.  As Mayor Kenney admitted, enforcement of violations would be handled "on a case-by-case basis." In addition, banning parades but allowing demonstrations that frequently take on characteristics of parades, the moratorium order provides Defendants the ability to enforce the moratorium order as to certain groups and activities but to forebear upon enforcement as to other groups and activities.

92.     Defendant Alexander's predecessor, former Managing Director Abernathy, admitted that he called the organizers of several prominent parades, all of which are First Amendment-protected activities, in advance of the announcement of the Event Moratorium to inform them that their events were prohibited.  This action reveals the artificial distinction between "parades" and "demonstrations."

93.     The moratorium order is vague as to what precisely is being required, what public events are banned, and what actions may result in criminal penalties, fines, or imprisonment.

94.     As a result of these ambiguities, no reasonable person could understand what conduct violates the moratorium order and might subject that person to criminal penalties.

95.     PVV has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Moratorium Order.

96.     Pursuant to 42 U.S.C. §§ 1983 and 1988, PVV is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Moratorium Order.

97.     Because it was necessary for PVV to engage the services of private counsel to vindicate their rights under the law, PVV is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, PVV respectfully requests that this Court:

A.     Enter a judgment declaring that the moratorium order violates the First and Fourteenth Amendments to the United States Constitution facially and as applied;

B.      Enter an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the moratorium order or otherwise interfering with PVV's rights as well as those of other similarly situated groups not before the Court;

C.      Enter an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from refusing to accept and process permit applications for public events;

D.      Award Plaintiff its attorneys' fees and costs; and

E.      Such other and further relief as the Court deems appropriate and just.


Dated:  October 30, 2020            Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By:  /s/ Jason P. Gosselin
Jason P. Gosselin
jason.gosselin@faegredrinker.com
John Bloor
john.bloor@faegredrinker.com
One Logan Square
Suite 2000
Philadelphia, PA  19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757

*Attorneys for the Plaintiff, Philadelphia Vietnam Veterans Memorial Society*