## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILADELPHIA VIETNAM VETERANS MEMORIAL SOCIETY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | **NO. 20-5418** |
| v. | : | |
| **JAMES KENNEY, in his official capacity as Mayor of the City of Philadelphia,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                             DECEMBER 23, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

This action is one of many filed as a result of state and local governmental restrictions imposed in response to the COVID-19 Pandemic. This pandemic has wreaked havoc worldwide,[1] prompting national and local governments to enforce lockdowns and impose strict restrictions on interpersonal gatherings in an effort to prevent the spread of the virus. Philadelphia's municipal government is no exception. On July 14, 2020, the City of Philadelphia's Office of Special Events issued an event moratorium (the "Moratorium") advising that the Office of Special Events would not "accept, review, process, or approve applications, issue permits, or enter into agreements for special events or public gatherings of 50 or more people on public property through February 28,

---

[1] As of the date of this opinion, over seventeen million United States residents have tested positive for COVID-19, and more than 315,000 have died as a result of the disease. CDC COVID DATA TRACKER, available at https://covid.cdc.gov/covid-data-tracker/ (last visited December 22, 2020).

2021."[2]   The Moratorium provided that "Demonstrations and First Amendment-protected activities" were exempt from the restrictions. [ECF 1-3, Ex. A]. In the months following issuance of the Moratorium (from September through November 2020), Defendant James Kenney, in his capacity as Mayor of the City of Philadelphia ("Mayor Kenney"), signed several executive orders imposing and updating restrictions on outdoor gatherings. [*See* ECF 9-1, 9-2, 9-3, 9-4]. The most recent such executive order dated November 23, 2020 (the "November 23, 2020 Executive Order"), remains in effect.

Plaintiff Philadelphia Vietnam Veterans Memorial Society ("Plaintiff"), which, *inter alia*, organizes an annual parade to honor veterans, filed a complaint asserting claims under 42 U.S.C. § 1983 and seeking declaratory and injunctive relief, [ECF 1], against Mayor Kenney and Tumar Alexander, in his official capacity as Acting Managing Director of the City of Philadelphia ("Director Alexander") (collectively, "Defendants"). At the same time, Plaintiff filed the instant motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure ("Rule") 65. [ECF 3]. In its underlying motion, Plaintiff seeks to preliminarily enjoin enforcement of both the July 14, 2020 Moratorium and the November 23, 2020 Executive Order on the basis that both violate Plaintiff's First Amendment rights to speech and assembly.[3] [ECF 10].[4] In response, Defendants

---

[2]   As clarified by Defendants in their response, and nowhere refuted by Plaintiff, the Moratorium was not an official executive order but rather a mere press release and unofficial policy statement placed on the Office of Special Events' website. The Moratorium was eventually followed by official executive orders which imposed various COVID-19 related restrictions.

[3]   In its reply for the first time, Plaintiff seeks to enjoin the enforcement of the November 23, 2020 Executive Order, asserting that such injunctive relief is needed because the Executive Order implicates the same First Amendment issues as the Moratorium originally challenged in the complaint. [ECF 10]. Considering the continually evolving restrictions on outdoor events, and the fact that both parties addressed the November 23, 2020 Executive Order in their respective briefs, this Court will address Plaintiff's new arguments to enjoin enforcement of the November 23, 2020 Executive Order.

[4]   The United States Attorney's Office for the Eastern District of Pennsylvania filed a statement of interest in support of Plaintiff's arguments, which this Court has considered. [ECF 4].

argue that Plaintiff's challenge to the July 14, 2020 Moratorium is moot and that Plaintiff's challenge to the November 23, 2020 Executive Order does not meet the standard for the issuance of a preliminary injunction because Plaintiff has failed to show a likelihood of success on the merits of its constitutional claims.

For the following reasons, Plaintiff's motion for a preliminary injunction is denied.

**LEGAL STANDARD**

Rule 65 governs the issuance of a preliminary injunction. Such relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A court deciding a request for injunctive relief must consider four factors: (1) whether the movant has shown a probability of success on the merits; (2) whether the movant will be irreparably injured if relief is denied; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief is in the public interest. *Crissman v. Dover Downs Ent. Inc.*, 239 F.3d 357, 364 (3d Cir. 2001).

In *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), the United States Court of Appeals for the Third Circuit clarified the burden on a movant when seeking preliminary injunctive relief and held that the movant must first demonstrate "a better than negligible chance" of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction. *Reilly*, 858 F.3d at 179. The irreparable harm alleged must be "immediate." *EUSA Pharma, Inc. v. Innocol Pharmaceutical, Ltd.*, 594 F. Supp. 2d 570, 581 (E.D. Pa. 2009) (citing *ECRI v. McGraw Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). If a movant meets these two threshold requirements, the district court then "considers the remaining two factors and determines, in its sound discretion, whether the balance of the four factors weigh in favor of granting injunctive relief." *Reilly*, 858 F.ed at 179. Further,

a district court is not required to hold a hearing on a moving party's request for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990).

**DISCUSSION**

As noted, Defendants argue that Plaintiff's challenge to the Moratorium is moot and that Plaintiff's challenge to the November 23, 2020 Executive Order does not meet the standard for preliminary injunction.  The Court will address these arguments separately.

### *Plaintiff's Challenge to the July 14, 2020 Moratorium*

As a threshold matter, Defendants contend that any challenge to the July 14, 2020 Moratorium presents no actual case or controversy, and, thus, is moot because it:  (1) constituted a statement of policy that was never an official executive order with force of law; and (2) has been implicitly and expressly rescinded by several subsequent, official executive orders, which allow parades.  Plaintiff argues its challenge is not moot because Defendants' rescission of the July 14, 2020 Moratorium falls under the voluntary cessation doctrine.

The existence of a case or controversy is a prerequisite for all federal actions. *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).  A claim that involves "no case or controversy" is moot "if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003).  The existence of a case or controversy, in turn, requires "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal

controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Int'l Broth. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) (quoting *Dow Chem. Co. v. United States Envtl. Protection Agency*, 605 F.2d 673, 678 (3d Cir. 1979)).

Defendants argue that the July 14, 2020 Moratorium was an unofficial policy statement that lacked the force of law and is, therefore, not a matter for this Court. Other than a press release and a screenshot from the Office of Special Events website—neither of which reference an enforceable executive order or city ordinance—Plaintiff presents no evidence to rebut Defendants' contention that the Moratorium was just an unofficial policy statement not subject to judicial review. In the absence of any rebuttal from Plaintiff, this Court cannot conclude that Plaintiff has presented an actual and justiciable case or controversy with respect to the Moratorium and/or a likelihood of success on its challenge thereto.

Defendants also argue that Plaintiff's challenge to the Moratorium is moot because the purported restrictions it announced, and that Plaintiff challenges here, were implicitly and/or explicitly rescinded by various executive orders issued between September and November 2020. These executive orders provided the following relevant to Plaintiff's concerns with the Moratorium: (1) the City would not issue or require permits for *any* events, including parades; (2) the City would not disperse (and has not dispersed) any gatherings, even if such gatherings are not compliant with maximum event capacities; and (3) organizers could request support for the safety of those gatherings. [*See* ECF 9-2, 9-3, 9-4]. In addition, the November 23, 2020 Executive Order (the only one currently in effect) expressly rescinded the restrictions announced in the Moratorium [*See* ECF 9-2]. As such, these executive orders (which unlike the July 14, 2020 Moratorium, have legal effect) either implicitly or explicitly rescinded the restrictions expressed in the Moratorium and challenged by Plaintiff here.

Notwithstanding, Plaintiff argues that Defendants' explicit rescission of the Moratorium by way of the November 23, 2020 Executive Order falls within the voluntary cessation doctrine, which preserves a court's jurisdiction to determine the legality of the challenged order. Specifically, Plaintiff argues that Defendants merely issued the November 23, 2020 Executive Order on the eve of when Defendants' response was due to Plaintiff's underlying motion in order to create the mootness argument, and that Defendants plan to resume their unconstitutional acts upon conclusion of this litigation. Plaintiff's argument is unpersuasive.

"Voluntary cessation of challenged activity will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The party urging mootness bears the 'heavy burden' of showing that it will not 'revert to' its prior policy." *Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (internal citations omitted). In determining whether a party has met its burden of showing an adequate cessation, courts look to whether the defendant continues to defend the constitutionality of its actions; whether the defendant only changed its position in response to litigation; and whether the plaintiff seeks not only an injunction, but a declaratory judgment. *Id*. at 161-62.

This Court finds that Defendants' conduct since issuance of the July 14, 2020 Moratorium shows adequate cessation of the restrictions announced therein to render Plaintiff's challenges to the Moratorium moot. As noted above, the particular restrictions announced by the July 14, 2020 Moratorium that Plaintiff now challenges were all rescinded and/or modified by various executive orders issued between September and November 23, 2020. Plaintiff's primary argument regarding the July 14, 2020 Moratorium was that parades were treated more harshly than demonstrations, though both are constitutionally protected events. Two of the three Executive Orders issued between September and November—predating the filing of Plaintiff's complaint—

6

clearly provided that permits would not be issued for *either* parades or demonstrations, and that the restrictions with respect to gathering size would not be enforced. The timing and substance of these executive orders reflect that Defendants were not reversing the alleged constitutional violations for the first time on the eve of a litigation deadline for the purpose of mooting Plaintiff's challenges to the July 14 2020 Moratorium. In addition, though Defendants continue to defend the constitutionality of the November 23, 2020 Executive Order, they do not appear to make any defense of the July 14, 2020 Moratorium.

Based on the aforementioned analysis, this Court finds that there is no justiciable case or controversy concerning the July 14, 2020 Moratorium. By implicitly and explicitly rescinding the Moratorium (which alone had no legal effect), Defendants have already provided Plaintiff the relief it sought in its underlying motion with respect to the July 14, 2020 Moratorium. As such, this Court finds that Plaintiff's request to preliminarily enjoin the July 14, 2020 Moratorium lacks merit and is denied, as moot.

### *Plaintiff's Challenge to the November 23, 2020 Executive Order*

Though not expressly alleged in its complaint, Plaintiff also seeks to preliminarily enjoin enforcement of the November 23, 2020 Executive Order's maximum capacity and density restrictions premised on its same First Amendment arguments. Plaintiff contends it is likely to succeed on the merits of this claim because the November 23, 2020 Executive Order violates its First Amendment rights to freedom of speech and freedom of assembly.

1. *Likelihood of success on the merits*

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I. Though the government may not restrict **all**

expression in public fora, the government may impose content-neutral time, place, and manner restrictions that are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 201 (3d Cir. 2008). "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791.

Here, Plaintiff concedes that the restrictions at issue are content-neutral and that the City has a significant government interest in limiting the spread of COVID-19. [*See* Pltf. Reply, ECF 10, at pp. 13-14]. Plaintiff argues, however, that the restrictions are not narrowly tailored to serve the significant government interest. In support of this argument, Plaintiff contends (1) that the outdoor restrictions "do not appear to be supported by scientific data or the prevailing knowledge about the spread of the virus" because outdoor transmission of the virus is less likely, and (2) that the City has imposed less restrictive requirements in other situations, such as outdoor dining (where up to ten people may dine outdoors in close proximity) and Philadelphia City Hall's Christmas Village (where the City encourages, but appears not to enforce, avoidance of crowds of over ten people). [*Id.* at pp. 14-17]. Plaintiff's arguments are misplaced.

Contrary to Plaintiff's suggestion, content-neutral restrictions, like those at issue here, need not be the least restrictive means of achieving the government's goal. As aptly summarized by the United States Court of Appeals for the Third Circuit:

> The Supreme Court has stated that "restrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" *Ward*, 491 U.S. at 797, 109 S. Ct. 2746 (citation omitted). There is no need to determine if the restrictions are the least intrusive, but only whether the regulation "'promotes a substantial

> government interest that would be achieved less effectively absent the regulation.'" *Id.* at 799, 109 S. Ct. 2746 (citation omitted). "'The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." *Id.* at 800, 109 S. Ct. 2746 (citation omitted).

*Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 202 (3d Cir. 2008).

On the record before this Court, Defendants' restrictions appear sufficiently narrowly tailored to serve the government's significant interests in reducing the spread of COVID-19. While Plaintiff notes public health experts' warnings that indoor gatherings pose a higher risk of virus transmission than outdoor gatherings, that difference does not necessitate the conclusion that regulations affecting outdoor gatherings are not appropriate or permissible. As noted, to pass the applicable level of scrutiny, the restrictions need only promote the substantial government interest in reducing the spread of COVID-19. This Court cannot conclude at this stage that limiting outdoor events to ten persons per 1000 square feet and/or 2000 people total is not aligned with public health guidance recommending both social distancing and limits on public gatherings, even outdoors, to prevent the spread of COVID-19. In addition, the restrictions at issue appear to "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. Such alternative means need only provide a "'reasonable opportunity' for communication of the speaker's message." *Galena v. Leone*, 638 F.3d 186, 203 (3d Cir. 2011) (citation omitted). As described above, the restrictions at issue here actually allow parades and other public gatherings, subject to density and maximum capacities.

In sum, on the present record, Plaintiff has not demonstrated a likelihood of success on the merits of its claims. Accordingly, Plaintiff's motion for a preliminary injunction is denied.

*2. Irreparable harm*

Plaintiff has also failed to show that it is more likely than not that it will suffer irreparable harm if its motion is not granted. Plaintiff's effort to meet this requirement is limited to its conclusory suggestion that a violation of a constitutional right is *per se* irreparable harm. The Third Circuit has rejected this oft-repeated notion:

> It is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." But the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. Rather the plaintiffs must show "a chilling effect on free expression." It is "purposeful unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes." Accordingly, it is the "direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury." Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction.

*Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (internal citations omitted); *see also Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013) (reiterating *Hohe* holding with respect to irreparable harm). Plaintiff makes no allegations or argument to substantiate any "chilling effect." Moreover, as described above, the Executive Order allows Plaintiff to hold a parade without a permit, on equal footing with all other events, and without threat of being dispersed. In addition, any harm to Plaintiff is not irreparable because it could hold a parade upon expiration of the present, temporary Executive Order. Under these circumstances, this Court finds that Plaintiff has not met its burden with respect to immediate, irreparable harm.

*3. Greater harm to the nonmoving party and public interest*

Finally, even if Plaintiff were able to articulate irreparable harm, this Court cannot conclude that Plaintiff's alleged harm outweighs the potential harm to the general public if the restriction is lifted. Enjoining the actions of elected officials in matters that affect public safety,

such as the COVID-19 Pandemic, also constitutes an irreparable harm to the governmental interest. *See Maryland v. King*, 567 U.S. 1301, 1301 (2012).  Here, granting a preliminary injunction may result in additional COVID-19 transmissions, including more cases of serious illness and death. Thus, the potential of harm to the public is significant and, on balance, not outweighed by the harm Plaintiff might suffer.  Accordingly, Plaintiff's motion for a preliminary injunction is denied.

**CONCLUSION**

For the reasons set forth, Plaintiff's motion for a preliminary injunction is denied.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.