**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILADELPHIA VIETNAM VETERANS** | : | |
| **MEMORIAL SOCIETY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5418** |
| | : | |
| **JAMES KENNEY, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

<u>**ORDER**</u>

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion to Dismiss Plaintiff's Complaint filed by Defendants James Kenney, in his official capacity as Mayor of the City of Philadelphia, and Tumar Alexander, in his official capacity as Managing Director of the City of Philadelphia, and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED**.  It is further **ORDERED** that all claims against James Kenney and Tumar Alexander, in their official capacities, are **DISMISSED**.

BY THE COURT:

_____
NITZA I. QUIÑONES ALEJANDRO, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **PHILADELPHIA VIETNAM VETERANS MEMORIAL SOCIETY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5418** |
| | : | |
| **JAMES KENNEY, et al.,** | : | |
| **Defendants.** | : | |

**DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants, James Kenney, in his official capacity as Mayor of the City of Philadelphia, and Tumar Alexander, in his official capacity as Managing Director of the City of Philadelphia, hereby file this Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  In support of this motion, Defendants incorporate the attached Memorandum of Law.  Defendants respectfully request that this Court dismiss the claims asserted against them in Plaintiffs' Complaint.

Date:  January 15, 2021                    Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, Acting City Solicitor

_/s/ Diana P. Cortes_____
By: Anne B. Taylor, Chief Deputy City Solicitor
1515 Arch Street, 17th Floor
Philadelphia, PA  19102-1595
(215) 683-5381

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **PHILADELPHIA VIETNAM VETERANS MEMORIAL SOCIETY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5418** |
| | : | |
| **JAMES KENNEY, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A CLAIM**

Plaintiff Philadelphia Vietnam Veterans Memorial Society sued James Kenney and Tumar Alexander, in their official capacities as Mayor and Managing Director of the City of Philadelphia, under 42. U.S.C. § 1983. By its Complaint, Plaintiff contends that the July 14, 2020 announcement of a moratorium on events allegedly violated its constitutional rights, and seeks injunctive relief. Immediately after filing suit, Plaintiff moved for entry of a preliminary injunction. Defendants responded in opposition, arguing, among other things, that Plaintiff lacked standing to pursue its claims; that Plaintiff's claims were moot; and that Plaintiff could not establish a constitutional harm. While those arguments regarding standing and the substantive defects with Plaintiff's claims apply equally to the Court's consideration of the Complaint, in the interest of brevity Defendants limit the basis on which they move to dismiss to the core argument that, as already held by this Court, Plaintiff's claims are moot. Plaintiff does not present a justiciable issue to this Court, and its Complaint should be dismissed.

Having already denied Plaintiff's application for injunctive relief, the Court should now dismiss Plaintiffs' Complaint against Defendants for lack of jurisdiction.

## I.   FACTUAL HISTORY[1]

The City of Philadelphia's Office of Special Events was designed to ensure that people who wanted to have a special event in the City could do so.   https://phlevents.org/.   The Office of Special Events was temporarily closed as a result of the substantial negative impact the Covid-19 pandemic had on the City's budget.   *Id.*

In conjunction with the temporary closure of the Office of Special Events, on July 14, 2020, City officials announced and published an "Event Moratorium" on the Office of Special Events website.   Exhibit A to Pl.'s Compl., ECF No. 1-4.   The moratorium, which was not an official Executive Order but rather was a press release and unofficial policy placed on the Office of Special Events' website, stated that for crowds over 50 people the Office of Special Events would not "accept, review, process, or approve applications, issue permits, or enter into agreements for special events or public gatherings."   *Id.*   The statement specified that the moratorium would apply to "festivals," "parades," "concerts," "carnivals," "fairs," "flea markets."   *Id.*   The statement also specified that the moratorium would not apply to "demonstrations and First-Amendment protected activities."   *Id.*

The City officials who drafted this moratorium did not fully appreciate that parades and festivals could also constitute First Amendment-protected activity.   Rather, they were focused upon the non-speech related greater resource demands and greater potential for COVID transmission at such parades and festivals, as opposed to demonstrations.   *See, e.g.*, https://www.phila.gov/MDO/SpecialEvents/Pages/AboutSpecialEvents.aspx.

---

[1] The following factual recitation incorporates that presented to the Court in Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction.  Citations have been modified to the documents and public records placed before the Court by way of the briefing on injunctive relief.  The Court can rely on the findings and conclusions it reached in denying a motion for preliminary injunction in deciding a subsequently-filed motion to dismiss.  *McTernan v. City of York, Penn.*, 577 F.3d 521, 530-31 (3d Cir. 2009).  Further, such consideration of a factual record is appropriate where, as here, Plaintiff's claims are moot.  *Mayer v. Wallingford-Swarthmore School Dist.*, 405 F. Supp. 3d 637, 640-41 (E.D. Pa. 2019).

Immediately thereafter, and well before the filing of this lawsuit, the City clearly amended its official guidance to correct this misstep. That subsequent guidance demonstrates that the City does not make the distinction alleged by Plaintiff but rather that the City treats parades and demonstrations the same. Indeed, when the distinction between parades and demonstrations was brought to the City's attention, it swiftly corrected this initial misstep. On July 22, 2020, U.S. Attorney William McSwain wrote to the City Solicitor's Office, expressing concern that the City would allow demonstrations but prohibit parades. *See* Ex. E to Defs.' Resp., ECF No. 9-5. Given that the City never enforced this distinction, the City Solicitor swiftly responded on July 27, 2020, explaining that there were legitimate differences between the two events but also, more importantly, explaining that the City would treat parades and demonstrations the same: "the City will avoid forcibly shutting down spontaneous, peaceful gatherings of persons engaged in <u>any</u> kind of First Amendment activity." *See* Ex. F to Defs.' Resp., ECF No. 9-6 (emphasis original). The City would not act to break up parades <u>or</u> demonstrations, and it would not grant permits for either activity.

On September 15, 2020, Jason Gosselin, Plaintiff's counsel and former law partner to Mr. McSwain, wrote to the City and likewise challenged the purported distinction between parades and demonstrations. Ex. B to Pl.'s Compl., ECF No. 1-5. In response, *see* Ex. C to Pl.'s Compl., ECF No. 1-6, the Law Department first informed him that the City increased its outdoor gathering limits from 50 to 150 people. *See* Ex. G to Defs.' Resp., ECF No. 7. Moreover, Plaintiff's counsel was advised that the City would not be enforcing permitting requirements for any gathering (whether parade or demonstration; whether above or below the size limits). Most importantly, Plaintiff's counsel received the exact same representation as Mr. McSwain: that, "in an effort to avoid confrontation," "the City has not been forcibly dispersing any gatherings." *See*

Ex. C to Pl.'s Compl.  Therefore, although citizens were "supposed to follow the content-neutral [size] limits," we would not actually enforce those limitations against parades or demonstrations. *Id.*  Accordingly, "the bottom line [was] that [Plaintiff's] members can gather on public space." *Id.*  Counsel was also advised that the City would soon be issuing a revised order addressing these matters.  *Id.*

The City issued a revised Executive Order three days later, on September 22, 2020.  Ex. A to Defs.' Resp., ECF No. 9-1.  In that Order, the City re-established the following:  (1) the City would not be enforcing any special-events permitting requirements (regardless whether the gathering was a parade or demonstration); (2) although citizens were supposed to comply with the City's rules, the City would not disperse any gatherings absent safety concerns, even gatherings above the 150 person limit, because "confrontations can unnecessarily escalate,"; and (3) organizers of activities could request support for the safety of those gatherings.  *Id.*  Thus, as repeatedly explained, to both Plaintiff's counsel and the United States Attorney, the City's Executive Orders clarified that Plaintiff, and all other organizers, were free to organize parades.

On October 15, 2020, the City issued a new Executive Order once again expanding the gathering limits.  The new limits varied with the size of the space available, and ultimately allowed for gatherings up to 7500 people, provided that the organizers "requir[ed] all persons to wear masks or face coverings that cover the nose and mouth," and to maintain "6-foot social distancing requirements between household groups."  Ex. D to Defs.' Resp., ECF No. 9-4.  The City forwarded the new latest size limits to Plaintiff on October 26, 2020, *see* Ex. H to Defs.' Resp., ECF No. 9-8, yet Plaintiff, which gave no indication of any plan to host a parade larger than 7500 people, nonetheless filed the instant lawsuit four days later.

On November 16, 2020, in response to an intervening COVID surge, the City issued a

new Executive Order revising the gathering limits downward to 2000 people.  Ex. C to Defs.'

Resp., ECF No. 9-3.  Like the Order of October 15, 2020, the new limits varied with the size of

the space available, and also provided that the gatherings were subject to "masking and social

distancing requirements."  *Id.*  Plaintiff has not alleged that it wanted to host a parade larger than

2000 people either.

Although the September 22, 2020 Order expired on October 22, 2020, the City

"continued to adhere to the policies set forth in [that] Order" after its expiration.  Ex. B to Defs.'

Resp., ECF No. 9-2.  Consequently, on November 23, 2020, the City issued an Executive Order

that reaffirmed and updated the September 22, 2020 Executive Order.  *Id.*  In that Order of

November 23, 2020, the City again provided that: (1) the City was still not enforcing any special-

events permitting requirements (regardless whether the gathering was a parade or

demonstration), but that the City would continue to reevaluate its capacity to accept such permits

in the future; (2) although citizens were supposed to comply with the City's rules, the City would

not disperse any gatherings absent safety concerns, even gatherings above the (now 2000) person

limit, because "confrontations can unnecessarily escalate,"; and (3) organizers of activities could

request police support for the safety of those gatherings.  *Id.*

In that November 23, 2020 order, the City expressed again that, "the City welcomes all

forms of First Amendment expression, whether a protest, parade, festival, or any peaceful

expressive activity."  *Id.*  Parades have been permissible; parades continue to be permissible; and

parades will be permissible in the future.  The City also expressly rescinded the July 14, 2020

moratorium.  *Id.*  Since then, and reflecting the ever-changing public health issues associated

with the novel coronavirus and community spread thereof, the City has issued further revised

guidance that, again, reiterates its commitment to welcoming First Amendment expression.

7

*Third Supplemental Order Reaffirming City Policy Regarding Outdoor Gatherings and Events in Light of Emergency Restrictions* (Dec. 30, 2020), *available at*

https://www.phila.gov/media/20201231092800/Third-Supplemental-Order-Signed-123020.pdf

(last viewed Jan. 15, 2021).

All of these developments and interpretations were relayed in real time to Plaintiff. Nonetheless, this lawsuit challenging the July moratorium in order to seek the right to organize parades, and filed four days before the election, followed.

## II.    PROCEDURAL HISTORY

On October 30, 2020, Plaintiff filed a three-count complaint "to challenge a City-wide moratorium that went into effect on July 14, 2020, banning all parades and festivals through February 28, 2021." Compl., ECF No. 1, ¶ 2.[2]  Counts I and II alleged that the City violated Plaintiff's First Amendment rights by issuing a moratorium that allowed demonstrations but prohibited parades.  Plaintiff offered no allegations as to the size of the parade it wanted to organize.  Count III alleged that the moratorium on parades violated Plaintiff's due process rights because it is allegedly vague.  Plaintiff sought declaratory and injunctive relief and, on the same day, Plaintiff filed a motion for a preliminary injunction.  Mot. for Prelim. Inj., ECF No. 3.  Also on the same day, the United States filed a statement in support of Plaintiff's requests, echoing Plaintiff's claims of a First Amendment violation.  St. of Interest, ECF No. 4.

Defendants filed an opposition to Plaintiff's application for injunctive relief, ECF No. 9,

---

[2] Although filed on October 30, 2020, the Complaint names Tumar Alexander as a defendant in his official capacity as "Acting Managing Director of the City of Philadelphia."  Mr. Alexander's appointment as Managing Director was publicly announced over a week earlier, on October 21, 2020.  *See, e.g.*, https://www.phila.gov/2020-10-21-mayor-announces-appointment-of-tumar-alexander-as-managing-director/#:~:text=Mayor%20Announces%20Appointment%20of%20Tumar%20Alexander%20as%20Managing%20Director,-For%20immediate%20release&text=PHILADELPHIA%20%E2%80%94%20Mayor%20Kenney%20today%20announced,Director%20since%20September%205%2C%202020.

and Plaintiff filed a reply in further support, ECF No. 10.  Defendants argued that Plaintiff could not establish its entitlement to the sought restraints.  Notably, Plaintiff had no likelihood of success on the merits of its claims because (1) they were moot as a result of the issuance of subsequent health orders; (2) Plaintiff lacked standing to assert its claims; and (3) Plaintiff could not establish its First Amendment claims for a panoply of reasons.  *See generally* Resp. in Opp., ECF No. 9.  Defendants further argued that Plaintiff could not establish irreparable harm or that its claimed harm outweighed the potential harm to the general public that could result from its sought relief.  *Id.*

On December 23, 2020, this Court denied Plaintiff's application for injunctive relief. *Philadelphia Vietnam Veterans Memorial Society v. Kenney*, No. 20-5418, 2020 WL 7640930 (E.D. Pa. Dec. 23, 2020) ("*PVVMS*").  In that Opinion, the Court found that Plaintiff's challenge to the July 14, 2020 Moratorium does not present a justiciable case or controversy.  *Id.* at *2-4. The Court also addressed the November 23, 2020 Executive Order because, even though it was not at issue in Plaintiff's Complaint, its merits were substantively briefed by the parties.  *Id.* at *1 n.3.  Considering the restrictions imposed by that Executive Order, restrictions which were conceded by Plaintiff to be content-neutral and a function of the significant government interest that the City of Philadelphia has in reducing the transmission of Covid-19, the Court determined that they appear to be sufficiently narrowly-tailored such that Plaintiff could not establish a likelihood of success on the merits of its claim.  *Id.* at *4-5.  The Court further concluded that Plaintiff could not establish the other elements required for injunctive relief, irreparable harm or that the harm to Plaintiff was greater than the harm to the public interest.  *Id.* at *5-6.

Defendants, James Kenney and Tumar Alexander, in their official capacities as Mayor and Managing Director of the City of Philadelphia, now move to dismiss the claims asserted

against them under Federal Rule of Civil Procedure 12(b)(1).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction.  A motion to dismiss pursuant to Rule 12(b)(1) challenges the authority of a federal court to consider a case or claim. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) ("At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." (internal quotations omitted)).  Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged.  *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

"Mootness is a proper basis for a 12(b)(1) motion to dismiss because the mootness doctrine implicates jurisdictional matters."  *Mayer*, 405 F. Supp. 3d at 640.  Where facts go to the power of the court to hear the case, the Court "is free to weigh the evidence and satisfy itself" that it has jurisdiction to do so.  *Id.*

## IV.   LEGAL ARGUMENT

Plaintiff's Complaint suffers from several deficiencies, both jurisdictional and substantive.  As Defendants argued in opposition to Plaintiff's application for an injunction, Plaintiff lacks standing and cannot establish a likelihood of success on the merits of its claims because it fails to state a claim.  Defendants incorporate by reference their arguments on these jurisdictional and procedural defects with Plaintiff's Complaint.  However, because the Court has already decided that Plaintiff's claims are moot, and therefore non-justiciable, Defendants limit their motion to dismiss Plaintiff's Complaint on that basis.

In its December 23, 2020 Opinion denying Plaintiff's application for injunctive relief, the Court detailed the legal requirement that, to maintain a civil action, a plaintiff must present an

active case or controversy.  The Court explained:

> The existence of a case or controversy is a prerequisite for all federal actions. *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)). A claim that involves "no case or controversy" is moot "if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003). The existence of a case or controversy, in turn, requires "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Int'l Broth. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) (quoting *Dow Chem. Co. v. United States Envtl. Protection Agency*, 605 F.2d 673, 678 (3d Cir. 1979)).

*PVVMS*, 2020 WL 7640930, at *2.

Regarding mootness, by its Complaint Plaintiff challenges a formally rescinded interpretation of City statements and policies.  Since long before the existence of this lawsuit, the City repeatedly explained to Plaintiff that it, and other potential speakers, can organize parades, exactly like demonstration organizers.  The challenged moratorium – a statement of policy that was never an official Executive Order – no longer exists; did not result in differential treatment of parades and demonstrations; and has been expressly rescinded and replaced by official Executive Orders.  Indeed, this Court has already found that the July 14, 2020 Moratorium is not an official policy that presents an actual case or controversy.  *PVVMS*, 2020 WL7640930, at *3.  And that unofficial policy has been clearly superseded, rendering any potential challenge moot.

On rescission, the City's Executive Orders issued subsequent to the challenged moratorium specifically state that the City is not currently enforcing any special-events permitting requirements for either parades or demonstrations, and the City is making its police resources available to all gatherings, including both parades and demonstrations.  *See, e.g.*, Executive Order of November 23, 2020, Ex. B to Defs.' Resp., ECF No. 9-2.  Further, the City's

Executive Orders specifically state that the City will not enforce its size limitations absent safety concerns. *Id.* No reasonable person condones bigger crowds in the current COVID climate, but the City will not disperse them either, whether parade or demonstration. This is the City's policy, and Plaintiff knew as much before filing its Complaint. *See* Executive Order of September 22, 2020, Ex. D to Pl.'s Compl., ECF No. 1-7.

Further, any suggestion that the City might change course and prohibit parades in the future is pure speculation. As the City repeatedly informed Plaintiff, parades were never treated in a different manner than demonstrations; the City correspondingly rescinded the purported discrepancy between parades and demonstrations in the moratorium through Executive Order; and the City's position on this point has not wavered. A "case will be considered moot, and therefore nonjusticiable as involving no case or controversy, if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *In re Surrick*, 338 F.3d at 229. Plaintiff is seeking the right to organize a parade but, because Plaintiff and all other parade organizers, much like any demonstrators, could organize a parade (and have been able to do so), Plaintiff's complaint is moot.

Caselaw supports the conclusion that Plaintiff's complaint is moot. In *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856 (3d Cir. 2012), for example, the plaintiff desired to lead a demonstration on the sidewalk near Sixth Street at the entrance to the Liberty Bell Center, but the National Park Service originally prohibited him from leading the demonstration, so he brought a First Amendment challenge. Ultimately, the defendant revised its regulations to allow the demonstration, designating Sixth Street as a public forum and eliminating permitting requirements. The Third Circuit held that the First Amendment claim was moot, despite the plaintiff's contention that the defendant might abandon its regulations once the litigation became

12

final.  The Court explained that "government officials are presumed to act in good faith," and
that the plaintiff was "unable to rebut this presumption as he has not made any showing of bad
faith on the part of the Park Service."  *Id.* at 861.  The Court then held that "[t]his presumption
and the changes to the Park Service's regulations concerning protests on the Sixth Street
sidewalk make it unreasonable to expect that future constitutional violations will recur."  *Id.*; *see
also Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) ("We note additionally that cessation
of the allegedly illegal conduct by government officials has been treated with more solicitude by
the courts than similar action by private parties.").

    The same analysis applies here.  Plaintiff has not rebutted the City's presumption of good
faith.  Moreover, this good-faith presumption – coupled with the fact that the City never enforced
a distinction between parades and demonstrations; and that the City issued Executive Orders
specifying that treat parades and demonstrations would be treated the same (and repeatedly told
Plaintiff as much) – renders this case moot.  Much like in *Marcavage*, where "there [was] no
indication that the regulation allowing permit-less demonstrations … was adopted to avoid an
adverse judgment in this case and will be abandoned once this case becomes final," 666 F.3d at
861, there is no indication here that the City plans to start dispersing only parades after this
litigation ends.  *See also Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) ("We accept
counsel's representation to us, and agree that this appeal as to the minors Marissa Miller and
Grace Kelly, and their mothers, MaryJo Miller and Jami Day, is mooted by the District
Attorney's agreement to provide their requested relief."); *DeMoss v. Crain*, 636 F.3d 145, 151
(5th Cir. 2011) ("without evidence to the contrary, we assume that formally announced changes
to official governmental policy are not mere litigation posturing"); *Rio Grande Silvery Minnow
v. Bureau of Reclamation*, 601 F.3d 1096, 1118 (10th Cir. 2010) (upholding mootness because

the government "took the concrete step in 2003 of issuing a new biological opinion"); *cf. Sec. Nat'l Ins. Co. v. Amchin*, 2016 WL 1392258, at *5 (E.D. Pa. Apr. 7, 2016) (finding case was moot because there was no "manipulative purpose" in defendant's change of position).

Considering these facts and arguments, the Court already concluded that "Defendants' conduct since issuance of the July 14, 2020 Moratorium shows adequate cessation of the restrictions announced therein to render Plaintiff's challenges to the Moratorium moot." *PVVMS*, 2020 WL 7640930, at *3. Consistent with this conclusion, Plaintiff brings no justiciable claim in its Complaint, and its claims should be dismissed for lack of jurisdiction.

## V.    CONCLUSION

For the reasons set forth above and in the Court's December 23, 2020 Opinion, Plaintiff does not present an actual case or controversy and its Complaint should be dismissed for lack of subject matter jurisdiction.


Date:  January 15, 2021              Respectfully submitted,

                                     CITY OF PHILADELPHIA LAW DEPARTMENT
                                     Diana P. Cortes, Acting City Solicitor

                                      */s/ Diana P. Cortes*
                                     By: Anne B. Taylor, Chief Deputy City Solicitor
                                     1515 Arch Street, 17th Floor
                                     Philadelphia, PA  19102-1595
                                     (215) 683-5381

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **PHILADELPHIA VIETNAM VETERANS MEMORIAL SOCIETY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-5418** |
| | : | |
| **JAMES KENNEY, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date below, Defendants' Motion to Dismiss Plaintiffs' Complaint was filed via the Court's electronic filing system and is available for viewing and downloading by all parties of record.

Date:  January 15, 2021                Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, Acting City Solicitor

 */s/ Diana P. Cortes*
By: Anne B. Taylor, Chief Deputy City Solicitor
1515 Arch Street, 17th Floor
Philadelphia, PA  19102-1595
(215) 683-5381